IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

VIOLET WHITBY JOHNSON and HAROLD   *
JOHNSON,
                             *
     Plaintiffs,
                             *      CASE NO. 5:07-CV-425(CDL)
vs.
                             *
BIBB COUNTY BOARD OF EDUCATION,
SHARON PATTERSON, in her        *
individual and official
capacities as Superintendent of  *
Bibb County Public Schools,
LINDA HAYDEN, in her official    *
and individual capacities as
Deputy Superintendent of Bibb    *
County Public Schools, and MIKE
VAN WYCK, in his official and    *
individual capacities as
Assistant Superintendent of Bibb  *
County Public Schools,
                             *
     Defendants.
                             *

## O R D E R

This action arises from the non-renewal of Plaintiff Violet Whitby Johnson's ("Plaintiff") contract as Director for the Program for Exceptional Children for the Bibb County School District ("BCSD").[1]  Plaintiff alleges, among other things, that she was discriminated and retaliated against because of her race.  Plaintiff, along with husband Harold Johnson ("Mr. Johnson"), filed this action

---

[1] Plaintiffs incorrectly identified "Bibb County School District" as "Bibb County Public Schools."  In this Order, the Court refers to the entity by its correct name, Bibb County School District.

against the Board of Public Education for Bibb County ("BEBC");[2] Sharon Patterson, individually and in her official capacity as Superintendent of BCSD; Linda Hayden, individually and in her official capacity as Deputy Superintendent of BCSD; and Mike Van Wyck, individually and in his official capacity as Assistant Superintendent of BCSD. Plaintiff alleges federal claims of racial discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), as well as a racial discrimination claim under 42 U.S.C. § 1981 ("§ 1981") brought pursuant to 42 U.S.C. § 1983 ("§ 1983"). Plaintiff also alleges violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution brought under § 1983, as well as a wage discrimination claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d). Plaintiff alleges state law claims for intentional and negligent infliction of emotional distress. Mr. Johnson alleges a state law claim for loss of consortium.[3]

---

[2]Plaintiffs incorrectly identified "Board of Public Education for Bibb County" as "Bibb County Board of Education." In this Order, the Court refers to the entity by its correct name, Board of Public Education for Bibb County.

[3]On December 31, 2008, Defendants filed and served a Suggestion of Death of Plaintiff Harold Johnson (Doc. 18). Pursuant to Federal Rule of Civil Procedure 25(a), the Court may order substitution of a proper party if a motion for substitution is made within ninety days after service of the statement noting the death was made; if not, the action must be dismissed. Here, no motion for substitution has been made. Accordingly, Mr. Johnson's state law claim for loss of consortium is hereby dismissed.

Defendants moved for summary judgment as to all of Plaintiff's claims (Doc. 22). Plaintiff, who is represented by counsel, did not respond to Defendants' motion. For the following reasons, Defendants' motion is granted.

### SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When a movant moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To meet this burden, the movant may point to "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks omitted). In the alternative, the movant may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. A movant is not required to come forth with evidence negating the nonmovant's claim. *See id.*

Once a movant meets its burden, the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 324. The nonmoving party must "go beyond the pleadings," *id.*, and point the Court to "specific facts showing

3

a genuine issue for trial," Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324. A nonmovant is not required to produce evidence in a form that would be admissible at trial, but he or she must point to some evidence to show a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.; accord* Fed. R. Civ. P. 56(e)(1).

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmovant and drawing all justifiable inferences in his or her favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmovant-there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

4

BACKGROUND

## I.   The Parties

### A.   Plaintiff Violet Whitby Johnson

At all relevant times, Plaintiff was an employee of BCSD. Plaintiff began working for BCSD in the late 1970s as a teacher. (Defs.' Statement of Material Facts to Which There Is No Genuine Issue to Be Tried [hereinafter SOF] ¶ 1; *see* Pl.'s Dep. 65:13-17, Sept. 30, 2008 [hereinafter Pl.'s Dep. I].)[4] Plaintiff worked as an assistant principal in several different schools from approximately 1988 until 1994. (SOF ¶ 2; *see* Pl.'s Dep. I. 61:6-15.) In 1994, Plaintiff became the Admissions Coordinator for the Program for Exceptional Children ("PEC"). (SOF ¶ 2.) Plaintiff was the Admissions Coordinator for the PEC until 2002, when she was named the PEC Director. (*Id.* ¶ 3.)

### B.   Defendant Mike Van Wyck

Before Plaintiff's appointment as PEC Director, Defendant Mike Van Wyck ("Van Wyck") served as the PEC Director for nearly 26 years. (SOF ¶ 8; *see* Van Wyck Aff. ¶ 2, Jan. 30, 2009.) While the PEC

---

[4]Plaintiff failed to respond to Defendants' Statement of Material Facts as to Which There is No Genuine Issue to be Tried. "All material facts contained in the moving part[ies'] statement which are not specifically controverted by the [nonmoving party] in [the nonmoving party's] statement shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. R. 56. Therefore, all facts in Defendants' Statement of Material Facts are deemed admitted for the purposes of this Order. Notwithstanding these "admissions," the Court acknowledges its duty to "review the movant[s'] citations to the record to determine if there is, indeed, no genuine issue of material fact." *See Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (internal quotation marks omitted).

Director, Van Wyck directly supervised Plaintiff in her position as Admissions Coordinator for the PEC. (SOF ¶ 5.) After Van Wyck was promoted to Assistant Superintendent for Student Support Services ("SSS") at the beginning of the 2001-02 school year, Plaintiff became the PEC Director. (*Id.* ¶¶ 8-9.) As Assistant Superintendent for SSS, Van Wyck was Plaintiff's immediate supervisor. (*Id.* ¶ 11.) However, following a BCSD reorganization after the 2004-05 school year, Van Wyck no longer supervised Plaintiff. (*Id.* ¶ 12.) Instead, Defendant Linda Hayden, the Deputy Superintendent for Teaching and Learning, became Plaintiff's immediate supervisor. (*Id.* ¶ 13.)

### C. Defendant Linda Hayden

At all relevant times, Defendant Linda Hayden was the Deputy Superintendent of Teaching and Learning for BCSD. After the 2004-05 school year, Hayden became Plaintiff's immediate supervisor. (SOF ¶ 13; *see* Hayden Aff. ¶ 2, Feb. 3, 2009.)

### D. Defendant Sharon Patterson

At all relevant times, Defendant Sharon Patterson was the superintendent of BCSD. (SOF ¶ 7; *see* Patterson Aff. ¶ 2, Feb. 4, 2009.) Patterson recommended Plaintiff for the PEC Director position after Van Wyck was promoted to Assistant Superintendent for SSS. (SOF ¶ 9; *see* Patterson Aff. ¶ 3.)

## II. Plaintiff's Performance as PEC Director

As PEC Director, Plaintiff was required to perform the following duties:

6

1.  Coordinate all special education programs in the district[;]
2.  Establish procedures to process and place eligible pupils in special education classes[;]
3.  Analyze and implement State and Federal guidelines and legal requirements governing special education[;]
4.  Implement curriculum and program planning[;]
5.  Keep informed of the state of financial aid for special education[;]
6.  Write State and Federal projects to secure funds[;]
7.  Develop budget recommendations and provide expenditure control on established budgets for special education[;]
8.  Conduct on-going needs assessment of special education needs through comprehensive survey programs for the continuous identification of exceptional children[;]
9.  Develop required and needed programs for mentally and physically handicapped students and for those pupils who are gifted through comprehensive planning[;]
10.  Evaluate effectiveness of all special education programs, facilities, curriculum, materials and supplies, parent relationships and recommend changes as needed[;]
11.  Contribute to the development of the total system philosophy of education[;]
12.  Work with the departments of elementary and secondary curriculum in the adoption of school policies to include special education needs[;]
13.  Assume responsibility for compiling, maintaining, and filing all reports and records legally required or administratively useful[;]
14.  Interpret Federal and State guidelines and regulations and the objectives and programs of the Program for Exceptional Children to the Board, the administration, the staff, parents, and the public at large[;]
15.  Assist in recruitment, selection, and recommendation for hiring special education personnel[;]
16.  Evaluate special education personnel as outlined in Board policy[;]
17.  Keep abreast of current trends in special education.

(Ex. 5 to Pl.'s Dep., Prof'l Job Description; *see* SOF ¶¶ 18-19; *see also* Patterson Aff. ¶ 5; Van Wyck Aff. ¶ 7; Hayden Aff. ¶ 6.)  While employed as PEC Director, Plaintiff received several complaints regarding her performance.  These complaints included, but were not

limited to, her failures to (1) comply with maximum class size regulations; (2) ensure the proper and timely billing of Medicaid; (3) provide sufficient leadership skills; (4) utilize grant money; (5) present findings of fact regarding a Needs Assessment report to school principals and special education consultants; and (6) provide required Georgia Leadership Evaluation Instrument ("GLEI") training for new employees.  Defendants contend that Plaintiff's PEC Director contract was not renewed because of her deficiencies *alone*.

   A.   Class Size Compliance

   As PEC Director, one of Plaintiff's responsibilities was to ensure that all classes were in compliance with state regulations regarding class size because classes "over the state limit w[ould] not receive state funding [for the] year." (Ex. 42 to Pl.'s Dep., Maximum Class Size Mem., Sept. 13, 2004; SOF ¶ 25.)  While employed as PEC Director, Plaintiff failed on numerous occasions to respond to requests by special education staff, teachers, and principals for additional paraprofessionals that were necessary to comply with the class size regulations.  (SOF ¶¶ 26-31; *see* Van Wyck Aff. ¶ 8.)  In fact, in October 2004, when Plaintiff failed to hire paraprofessionals herself, Van Wyck had to authorize six additional paraprofessionals in order to stay in compliance with the full-time equivalent count for the year.  (SOF ¶ 31; *see* Ex. 7 to Defs.' Mot. for Summ. J., Parapros Mem., Oct. 4, 2004.)

8

B.   Medicaid Billing

Plaintiff failed to ensure the timely and proper billing of Medicaid. (SOF ¶¶ 63-64; *see* Ex. 27 to Pl.'s Dep., Medicaid Billing Mem., May 19, 2005; *see also* Pl.'s Dep. 218:1-219:1, Oct. 14, 2008 [hereinafter Pl.'s Dep. II].)  For example, in May 2005, several speech therapists had not filed for Medicaid reimbursement, and even though Plaintiff received the monthly billing reports, she failed to ensure that those delinquent therapists were directed to bill. (SOF ¶¶ 60-63; *see* Van Wyck Aff. ¶ 16; *see also* Ex. 27 to Pl.'s Dep.). While Plaintiff was PEC Director, BCSD's compliance with Medicaid's Fee-for-Service program was only at an 84% compliance rate, which was below the goal of a 90% compliance rate. (SOF ¶¶ 71-72; *see* Ex. 37 to Pl.'s Dep., Ga. Dep't of Cmty. Health Letter, Feb. 3, 2006; *see also* Hayden Aff. ¶ 8.)  Because of this deficiency, BCSD was placed on a corrective action plan to implement internal compliance procedures. (SOF ¶ 72; *see* Hayden Aff. ¶ 8.)  Not only did Plaintiff fail to ensure the timely and proper billing of Medicaid, but she also attempted to avoid responsibility for this task by telling PEC Consultant Nancy Hicks that Medicaid billing was Hicks's responsibility, despite Van Wyck's directive that Medicaid billing was solely Plaintiff's responsibility. (SOF ¶ 65; Van Wyck Aff. ¶ 16; Pl.'s Dep. II. 83:1-6.)

9

C.   Leadership Skills

Although one of Plaintiff's responsibilities as PEC Director was to demonstrate strong leadership skills, Plaintiff failed to lead her department successfully.   In fact, her staff complained that Plaintiff did not support or trust them, that she was "unapproachable and rude," and that she "fail[ed] to follow up with staff." (SOF ¶ 32; see Van Wyck Aff. ¶ 9; see also Ex. 26 to Pl.'s Dep., Concerns Letter, Dec. 3, 2004.)  In addition, the PEC Department staff claimed that Plaintiff failed to provide sufficient clerical staff for regular staff meetings and that she failed to respond quickly to the needs of the staff, students, and school. (SOF ¶ 38; see Van Wyck Aff. ¶ 10: see also Ex. 25 to Pl.'s Dep., Summary of Meeting Letter, Dec. 13, 2004.)

D.   Utilization of Grant Money

Plaintiff also failed to use all grant money to benefit the special education department.  (SOF ¶ 43; see Van Wyck Aff. ¶ 12.) In 2000, the Office of Special Education Programs of the United States Department of Education awarded BCSD a grant. (SOF ¶ 44; see Van Wyck Aff. ¶ 12.)  Plaintiff worked with the grant in 2002, 2003, and 2004.  (SOF ¶ 45; see Van Wyck Aff. ¶ 12.)  The grant expired on October 31, 2004, and nearly $100,000 of the grant was not spent. (SOF ¶ 46; see Van Wyck Aff. ¶ 12.)  Plaintiff did not acknowledge her responsibility in failing to spend all of the grant money and "blamed everyone else instead." (SOF ¶ 47; see Van Wyck Aff. ¶ 12.)

The loss of the money was "critical" because several products and services were not purchased for the students. (SOF ¶ 48; *see* Van Wyck Aff. ¶ 12.)

### E.   Presentation of Findings

During the 2004-05 school year, a Needs Assessment was performed in the special education department by an independent agency in order to gauge how the department could improve its compliance with state and federal guidelines. (SOF ¶ 39.) Patterson requested that Plaintiff present the Needs Assessment report's findings to the school principals and special education consultants. (*Id.* ¶¶ 40-41; *see* Van Wyck Aff. ¶ 11; *see also* Patterson Aff. ¶ 7.) Although Patterson gave Plaintiff several weeks to prepare the presentation, Plaintiff failed to complete the presentation. As a result, the presentation was never given to the principals and consultants. (SOF ¶ 42; *see* Patterson Aff. ¶ 7.)

### F.   GLEI Training

As PEC Director, Plaintiff was expected to ensure that GLEI training was timely conducted for all applicable employees. However, Plaintiff failed to ensure that GLEI training was scheduled and timely conducted for two new employees during the 2004-05 and 2005-06 school years, and the GLEI training was only performed after Plaintiff was directed to do so months later. (SOF ¶¶ 75, 77; *see* Ex. 48 to Pl.'s Dep., Mem. at 1, Mar. 1, 2006; *see also* Hayden Aff. ¶ 11.)

11

III. **The Non-Renewal of Plaintiff's Contract and Plaintiff's Subsequent Position as Assistant Principal at Rosa Taylor Elementary School**

Due to the numerous concerns regarding Plaintiff's performance as PEC Director, Hayden met with Patterson and recommended that Plaintiff be removed as PEC Director at the end of the 2005-06 school year. (SOF ¶ 80; *see* Hayden Aff. ¶ 13.) After taking into consideration Hayden's recommendation and her own concerns regarding Plaintiff's performance as PEC Director, Patterson met with Plaintiff on April 7, 2006 and informed her that her contract as PEC Director was not going to be renewed. (SOF ¶ 81; *see* Patterson Aff. ¶ 9.) Instead, Plaintiff was offered a contract of employment as assistant principal at Rosa Taylor Elementary School for the 2006-07 school year, which Plaintiff accepted. (SOF ¶ 22; *see* Ex. 7 to Pl.'s Dep., Notice of Intention Not to Renew Letter, Apr. 12, 2006; *see also* Patterson Aff. ¶ 11.)

BCSD agreed not to decrease Plaintiff's 2006-07 salary, and Plaintiff was paid the same salary that she made as PEC Director. However, starting with the 2007-08 school year, Plaintiff's salary decreased at a rate of two percent per year until it lined up with what other assistant principals were receiving in salary. After two years as assistant principal at Rosa Taylor, Plaintiff reached thirty years of service with BCSD and was eligible for full retirement benefits, and she voluntarily retired. (SOF ¶ 16.)

## IV.  Plaintiff's Successor as PEC Director

Plaintiff's successor as PEC Director was Phillip Mellor, a white male.  (SOF ¶ 89; *see* Patterson Aff. ¶ 14.)  It is undisputed that Mellor's starting salary was greater than Plaintiff's salary as PEC Director.  (SOF ¶ 89.)  However, "Mr. Mellor's salary represented the amount required in order to induce him through the recruitment process to leave his prior employment and accept the job with BCSD." (*Id.; see* Patterson Aff. ¶ 14.)  Mellor was recruited because of his "experience, accomplishments, and skills."  (SOF ¶ 89.)

Before serving as PEC Director, Mellor was a special education director at another school district in Georgia.  (SOF ¶ 89; *see* Patterson Aff. ¶ 14.)  While the director, Mellor oversaw the special education requirements for No Child Left Behind.  Each of the schools in his district made Adequate Yearly Progress ("AYP") two years in a row, which was an accomplishment achieved by only twenty-three school systems in Georgia at that time.  (SOF ¶ 90; *see* Patterson Aff. ¶ 14.)  In addition, Mellor maximized special education funding, which resulted in substantial funding increases to his district each year he was director.  (SOF ¶ 91; *see* Patterson Aff. ¶ 14.)  Furthermore, under his leadership, Mellor's district was recognized at the state level as a "highest academic performing system."  (SOF ¶ 91.)  While director, Mellor implemented an inclusion model of special education, as well as a parent involvement plan, which were used on a statewide level.  (SOF ¶¶ 91-92; *see* Patterson Aff. ¶ 14.)

13

**V.   Plaintiff's Claims**

Plaintiff alleges claims of (1) racial discrimination, retaliation, and hostile working environment under Title VII (Am. Compl. ¶¶ 18-22); (2) pay discrimination on the basis of sex under the Equal Pay Act (*id.* ¶¶ 23-27); (3) violations of the Equal Protection Clause and the Due Process Clause brought through § 1983 (*id.* ¶¶ 28-35); (4) racial discrimination under § 1981 brought through § 1983 (*id.* ¶¶ 36-43); and (5) state law claims of intentional and negligent infliction of emotional distress (*id.* ¶¶ 44-48).  The Court will address each claim in turn.

DISCUSSION

**I.   Plaintiff's Title VII Claims**

    <u>A.</u>   <u>Plaintiff's Employer</u>

Plaintiff's Title VII claims may only be brought against her employer.  It is undisputed that Plaintiff's employer was BCSD, and the Court construes Plaintiff's official capacity claims against Patterson, Hayden, and Van Wyck as claims against BCSD.  *See Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007) (official capacity suit is another way of pleading an action against the entity of which an officer is an agent).  The remaining Defendants are entitled to summary judgment on Plaintiff's Title VII claims because they were not Plaintiff's employer.  BEBC is a separate entity from BCSD and

14

was not Plaintiff's employer.[5]   Furthermore, to the extent that Plaintiff brings Title VII claims against Patterson, Hayden, and Van Wyck in their individual capacities, the Court finds that these Defendants are entitled to summary judgment because it is well established that Title VII does not impose individual liability.  *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (per curiam) ("Individual capacity suits under Title VII are . . . inappropriate."); *see also Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995) (noting that state official, in his individual capacity, was not an "employer" within the meaning of Title VII).

In this action, Plaintiff asserts Title VII claims against BCSD for (1) race discrimination, (2) retaliation, and (3) hostile work environment.  The Court will address each claim in turn.

B.   Race Discrimination

Plaintiff first alleges that she was subjected to discrimination based upon race in violation of Title VII.

1.   *Analytical Framework*

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

---

[5]In any event, BEBC is not subject to suit because under Georgia law "a county board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued." *Cook v. Colquitt County Bd. of Educ.*, 261 Ga. 841, 841, 412 S.E.2d 828, 828 (1992).

race, color, religion, sex, or national origin[.]" 42 U.S.C. §
2000e-2(a)(1). Plaintiff may establish intentional discrimination by
presenting either direct or circumstantial evidence. *See McDonnell
Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Because
Plaintiff has not pointed the Court to any direct evidence of
discriminatory intent, she must establish discriminatory intent using
circumstantial evidence applying the framework established in
*McDonnell Douglas Corp.* and *Texas Department of Community Affairs v.
Burdine*, 450 U.S. 248 (1981).

Under this framework, Plaintiff must show that "(1) [s]he is a
member of a protected class; (2) [s]he was qualified for the
position; (3) [s]he suffered an adverse employment action; and (4)
[s]he was replaced by a person outside h[er] protected class or was
treated less favorably than a similarly-situated individual outside
h[er] protected class." *Maynard v. Bd. of Regents of Div. of Univs.
of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). If
Plaintiff establishes a prima facie case, then the burden shifts to
BCSD to articulate a legitimate, non-discriminatory reason for the
adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802.
Once BCSD satisfies this intermediate burden of production, Plaintiff
has the opportunity to discredit BCSD's proffered explanations for
its decision. Plaintiff may do this "either directly by persuading
the [C]ourt that a discriminatory reason more likely motivated [BCSD]
or indirectly by showing that [BCSD's] proffered explanation is

16

unworthy of credence." *Burdine*, 450 U.S. at 256.  The burden to establish pretext merges with Plaintiff's ultimate burden of proof of intentional discrimination.  *Id.*

### 2.   *Plaintiff's Prima Facie Case*

In this case, the elements of Plaintiff's prima facie case have been satisfied.  It is undisputed that Plaintiff is a member of a protected class (black female), that she was qualified for her position for purposes of a prima facie case,[6] that she suffered an adverse employment action when her PEC Director contract was not renewed, and that she was replaced by someone outside of her protected class (white male).  (Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. [hereinafter Defs.' Mem.] 8.)  Plaintiff has established a prima facie case, so the burden shifts to BCSD to articulate a legitimate non-discriminatory reason for the non-renewal.  *See Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).

### 3.   *BCSD's Legitimate, Non-discriminatory Reasons*

An employer's burden to rebut an inference of discrimination by presenting legitimate, non-discriminatory reasons for its employment action is "exceedingly light."  *Holifield v. Reno*, 115 F.3d 1555,

---

[6]The qualifications for the PEC Director position at the time Plaintiff held the position included the following: (1) a masters degree in special education; (2) five years of successful teaching experience; (3) a valid certificate as a Director of Special Education; (4) at least two years of experience as an Administrator; and (5) any other alternatives to these qualifications the Superintendent and Board found appropriate and acceptable.  (Ex. 5 to Pl.'s Dep., Prof'l Job Description at 1.)

17

1564 (11th Cir. 1997) (per curiam) (internal quotation marks omitted).  In this case, BCSD has met this burden.  While employed as PEC Director, Plaintiff had several deficiencies in her performance, which were all well documented by her supervisors and co-workers. These deficiencies included, but were not limited to, Plaintiff's failures to (1) ensure class size compliance (*e.g.*, SOF ¶¶ 24-31); (2)  ensure the timely and proper billing of Medicaid (*id.* ¶¶ 54-65); (3) lead her department successfully (*id.* ¶¶ 32-38); (4) utilize all grant money (*id.* ¶¶ 43-48); (5) present findings of fact to school principals and special education consultants in her department (*id.* ¶¶ 39-42); and (6) provide required GLEI training for new employees (*id.* ¶¶ 75, 77).  The Court finds that BCSD has rebutted Plaintiff's inference of discrimination by presenting non-discriminatory, legitimate reasons for the non-renewal of Plaintiff's PEC Director contract.  Therefore, the burden shifts back to Plaintiff to present evidence of pretext.

4.   *Plaintiff's Evidence of Pretext*

"A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal quotation marks omitted). Here, Plaintiff has presented no evidence from which a reasonable factfinder could conclude that BCSD's legitimate non-discriminatory reasons for the non-renewal of her PEC Director contract were

18

pretext.  Accordingly, because Plaintiff has not sustained her burden of creating a genuine issue of material fact as to the question of pretext, BCSD is entitled to summary judgment as to Plaintiff's Title VII race discrimination claim.

   C.   Retaliation

   Plaintiff next alleges that she was transferred in retaliation for her "allegations of discriminatory conduct by Defendants."  (Am. Compl. ¶ 20.)

      1.   *Analytical Framework*

   "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [an employee] has . . . participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  In order for Plaintiff to establish a prima facie case of retaliation under Title VII, she must show that "(1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is some causal relation between the two events." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).  Once the prima facie case is established, BCSD "must proffer a legitimate, non-retaliatory reason for the adverse employment action."  *Id.*  Plaintiff "bears the ultimate burden of proving by a preponderance of the evidence that

the reason provided by [BCSD] is a pretext for prohibited, retaliatory conduct." *Id.*

Because Plaintiff never filed a complaint of discrimination or a grievance while employed as PEC Director (*see* Patterson Aff. ¶ 19), Plaintiff's retaliation claim must be based upon her informal complaints of discrimination.  Protection afforded by the retaliation provision of Title VII "is not limited to individuals who have filed formal complaints, but extends as well to those, like [Plaintiff], who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam). Plaintiff can establish that she engaged in statutorily protected activity under Title VII's opposition clause only if "'[s]he shows that [s]he had a good faith, *reasonable belief* that the employer was engaged in unlawful employment practices.'" *Adams v. Cobb County Sch. Dist.,* 242 F. App'x 616, 621 (11th Cir. 2007) (per curiam) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).  Plaintiff must not only show that she subjectively believed she was being discriminated against, but also that her "belief was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960.

### 2.  *Plaintiff's Prima Facie Case*

The Court finds that Plaintiff has not established a prima facie case of retaliation under Title VII.  The Court assumes that

20

Plaintiff suffered a materially adverse action when her PEC contract was not renewed.  In addition, the Court will assume, without deciding, that Plaintiff engaged in statutorily protected activities under Title VII's opposition clause when (1) she wrote a memorandum to Van Wyck on January 13, 2005 that stated that she was "deeply offended" as an "African American woman" that Van Wyck had "pointed [his] finger at [her]" and told her "to never make [a] statement about following the chain of command again" (Ex. 24 to Pl.'s Dep., Concerns Mem. at 1, Jan. 13, 2005), and when (2) she wrote a memorandum to Van Wyck on May 27, 2005 that stated that "[s]ince the day [she] was named [PEC Director], some of [her] white colleagues and staff ha[d] resented an African American female's leadership" (Ex. 30 to Pl.'s Dep., Mem. at 1, May 27, 2005).  However, the Court finds that Plaintiff cannot show that there was a causal relation between her adverse action and the protected activities.

The temporal proximity between Plaintiff's protected activities and the adverse action must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) ("If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law."). Here, the adverse action (the April 12, 2006 non-renewal of Plaintiff's PEC Director contract) occurred nearly a *year*

after the statutorily protected activities (the January 13, 2005 and May 27, 2005 letters).   This time gap *alone* does not allow a reasonable inference of a causal relation between the protected expressions and the adverse action, and Plaintiff has failed to present *any* other evidence of causation.   *See, e.g., Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (noting that a three-month period between plaintiff's statutorily protected activity and the adverse employment action, without more, does not rise to the level of "very close") (internal quotation marks omitted); *Dar Dar v. Associated Outdoor Club, Inc.*, 201 F. App'x 718, 723 (11th Cir. 2006) (per curiam) (noting that a time gap of six months between plaintiff's last complaint and her termination weighed against a finding of causation).   Therefore, the Court finds that Plaintiff has not established a prima facie case of retaliation under Title VII.

Even if Plaintiff could establish a prima facie case of retaliation, she still would not prevail.   As explained previously, BCSD has provided legitimate reasons for the non-renewal of her contract, and Plaintiff has produced insufficient evidence of pretext.   Accordingly, even if Plaintiff could establish a prima facie case of retaliation, BCSD is entitled to summary judgment as to Plaintiff's Title VII retaliation claim.

D.   Hostile Work Environment

Lastly, Plaintiff contends that she suffered from a hostile work environment in violation of Title VII.

1.   *Analytical Framework*

A hostile work environment claim under Title VII is established upon proof that "'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  In order to establish a hostile work environment claim under Title VII, Plaintiff must show: (1) that she belongs to a protected group; (2) that she suffered from unwelcome harassment; (3) that the harassment was based on a protected characteristic; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment; and (5) that BCSD was responsible for such environment.  *Id.*  In deciding whether a hostile environment exists, the Court examines several factors, including "the frequency of the discriminatory conduct, the severity of the discriminatory conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's performance at work." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521-22 (11th Cir. 1995); *see Miller*, 277 F.3d at 1276 (finding that the hurling of

23

ethnic slurs three to four times a day constituted sufficiently frequent harassment).

2.   *Plaintiff's Prima Facie Case*

BCSD contends that Plaintiff has failed to satisfy a prima facie case.  The Court agrees.  Plaintiff has failed to point the Court to any evidence in the record that she suffered from "severe or pervasive" harassment.  In fact, the only evidence in the record which even suggests that Plaintiff suffered from "unwelcome" harassment involves two instances where she was allegedly humiliated in front of her peers.  Specifically, these incidents occurred when (1) Van Wyck pointed his finger at her during a meeting (Ex. 30 to Pl.'s Dep.; *see* Pl.'s Dep. I. 138:6-7), and (2) Patterson threw papers in the air after Plaintiff completed a presentation (Pl.'s Dep. I. 146:11-148:21).  This evidence does not rise to the level of severity and pervasiveness necessary to sustain a hostile work environment claim.  Although Plaintiff may have found this allegedly rude treatment objectionable, rudeness is not the standard for a Title VII hostile work environment claim.  *See, e.g., Keith v. MGA, Inc.*, 211 F. App'x 824, 828 (11th Cir. 2006) (per curiam) (noting that plaintiff, who never alleged that he was subjected to racial slurs or physical threats, had failed to establish prima facie case of hostile work environment).  Accordingly, the Court finds that BCSD is entitled to summary judgment as to Plaintiff's Title VII hostile work environment claim.

24

## II.  The Equal Pay Act[7]

Plaintiff asserts a claim under the Equal Pay Act ("EPA") against BCSD and Patterson in her individual and official capacities.[8] (Ex. 9 to Defs.' Mot. for Summ. J., 1st Interrogs. of Def. Sharon Patterson to Pl. Violet Whitby Johnson at 2, Sept. 29, 2008.) Because Plaintiff is not permitted to bring an EPA claim against Patterson in her individual capacity, *see Welch v. Laney*, 57 F.3d 1004, 1010-11 (11th Cir. 1995), and because BCSD is Plaintiff's only employer for the purposes of the EPA claim, the Court finds that Patterson is entitled to summary judgment as to Plaintiff's EPA claim against Patterson in her individual capacity.  The Court will now address Plaintiff's EPA claim against BCSD.

### A.   Analytical Framework

"An employee demonstrates a prima face case of an Equal Pay Act violation by showing that the employer paid employees of opposite

---

[7]29 U.S.C. § 206(d)(1) provides, in pertinent part, that

[n]o employer having employees . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex[.]

[8]Again, the Court construes Plaintiff's official capacity claims against Patterson as claims against Patterson's employer, BCSD. The Court also concludes that Plaintiff's EPA claims against BEBC fail because BCSD—and not BEBC—was Plaintiff's employer.

genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (internal quotation marks omitted). Plaintiff must show that "[t]hose employees against whom [she] compares herself . . . work in the same establishment as [her]." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (internal quotation marks omitted). Plaintiff may establish a prima facie case by identifying merely one comparator. *Id.*

Once Plaintiff establishes her prima facie case, BCSD "may avoid liability by proving by a preponderance of the evidence that the pay differences are based on (i) a seniority system; (ii) a merit system; (iii) a system which measure earnings by quantity or quality of production; or (iv) . . . any other factor other than sex." *Steger*, 318 F.3d at 1078 (alteration in original) (internal quotation marks omitted). These four justifications are considered affirmative defenses on which BCSD bears the burden of proof. "The burden is a heavy one because [BCSD] must show that the factor of sex provided *no basis* for the wage differential[.]" *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (internal citations and quotation marks omitted); *see also Mulhall*, 19 F.3d at 590-91. If BCSD overcomes this heavy burden, Plaintiff "must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." *Irby*, 44 F.3d

26

at 954; *see Steger*, 318 F.3d at 1078.  "If [Plaintiff] is able to create the inference of pretext, there is an issue which should be reserved for trial." *Irby*, 44 F.3d at 954.[9]

B.   Plaintiff's Prima Facie Case

In this case, Plaintiff asserts that Mellor, a white male and her successor as PEC Director, is her comparator for purposes of the EPA.  It is undisputed that Mellor received a higher salary than Plaintiff.  (SOF ¶ 89.)  Thus, for purposes of the pending motion, the Court finds that Plaintiff has established a prima facie case under the EPA.

C.   Affirmative Defense Analysis: Factors Other than Sex

BCSD contends that "factors other than sex" determined the pay differential between Plaintiff and Mellor.  At the summary judgment stage, BCSD must show that there are no genuine issues of material fact as to this affirmative defense.  *Mulhall*, 19 F.3d at 591.  "'Any other factor other than sex' is a general exception to application of the EPA." *Irby*, 44 F.3d at 955.  The factors an employer may consider in determining an employee's wage include the (1) "unique characteristics of the same job," (2) "an individual's experience,

_____

[9]The Court notes that although Plaintiff must produce evidence sufficient to create a genuine issue of fact regarding BCSD's affirmative defense in order to survive summary judgment as to her EPA claim, BCSD still bears the burden of persuasion that such genuine issue does not exist.  In other words, "by moving for summary judgment under the EPA, [BCSD] thrust[s] before the [C]ourt for scrutiny not only the merits of [Plaintiff's] evidence, but the strength of [its] own defense and must establish that there is an absence of any issue for jury resolution." *Mulhall*, 19 F.3d at 591.

training or ability," or (3) "special exigent circumstances connected with the business." *Id.* (emphasis and internal quotation marks omitted).

Here, BCSD claims that it considered *only* Mellor's prior experience, training, and ability in determining his salary; in other words, sex provided *no basis* for the wage differential. (*See* Defs.' Mem. 28-31.) BCSD looked at Mellor's accomplishments while the director of special education at another school district in Georgia. As director, Mellor oversaw the special education requirements for No Child Left Behind, and each school in his district successfully made AYP two years in a row, which was an accomplishment achieved by only twenty-three school systems in Georgia. (SOF ¶ 90; *see* Patterson Aff. ¶ 14.) BCSD also considered Mellor's ability to successfully maximize special education funding, which consequently resulted in substantial funding increases in his district each year he held the position as director. (SOF ¶ 91; *see* Patterson Aff. ¶ 14.) In addition, BCSD recognized and took into account Mellor's success in implementing an "inclusion" model of special education and a parent involvement plan, which at the time of his hiring by BCSD was a statewide model plan. (SOF ¶¶ 91-92; *see* Patterson Aff. ¶ 14.)

The Court finds that BCSD has affirmatively demonstrated by undisputed evidence that sex was not a basis for the wage differential, and no reasonable factfinder could conclude otherwise. Furthermore, Plaintiff has presented no affirmative evidence that

BCSD's reasons for the differential are pretextual, and BCSD is therefore entitled to summary judgment on Plaintiff's EPA claim.

**III. Equal Protection and Due Process Claims under § 1983**

Plaintiff next alleges that Defendants violated the Equal Protection Clause and Due Process Clause[10] of the Fourteenth Amendment to the United States Constitution.   Plaintiff has brought these claims pursuant to § 1983.   The Court will address each claim in turn.

A.   Equal Protection Clause

Plaintiff claims that Defendants' actions violated her equal protection rights under the Fourteenth Amendment to the Constitution. Plaintiff has brought this action pursuant to § 1983 to enforce these rights.   (Am. Compl. ¶ 33.)   The Court notes that "[w]hen section 1983 is used as a parallel remedy for violation . . . of Title VII, the elements of the two causes of action are the same." *Underwood v. Perry County Comm'n*, 431 F.3d 788, 793 (11th Cir. 2005) (per curiam) (alterations in original) (internal quotation marks omitted). Therefore, Plaintiff's parallel Fourteenth Amendment equal protection claim brought via § 1983 is reviewed under the same standards as Plaintiff's Title VII claims.   Accordingly, for the same reasons that

---

[10]It is unclear from the Amended Complaint whether Plaintiff is pursuing a claim under the Substantive Due Process Clause or the Procedural Due Process Clause, or both.  (*See* Am. Compl. ¶¶ 28-35.)  The Court assumes for the purposes of this Order only that Plaintiff is pursuing claims under both the Substantive Due Process Clause and the Procedural Due Process Clause of the Fourteenth Amendment made actionable through § 1983.

Plaintiff's Title VII discrimination claim fails, Defendants' motion for summary judgment as to Plaintiff's § 1983 equal protection claim is granted.

B.    Procedural Due Process

Plaintiff next alleges, through § 1983, that Defendants deprived her of her procedural due process rights in violation of the Fourteenth Amendment by demoting her from her position as PEC Director "without due notice." (Am. Compl. ¶¶ 31, 32.) The Court finds that Defendants are entitled to summary judgment as to this claim because Plaintiff, who became PEC Director in 2002, was not a tenured employee. (SOF ¶ 97; *see* Pl.'s Dep. I. 137:5-11.) Thus, as a non-tenured employee, Plaintiff had no right to the renewal of her contract, and she was not entitled to a hearing before the non-renewal of her contract; in other words, Plaintiff had no property rights in her employment as PEC Director. *See Dorsey v. Atlanta Bd. of Educ.*, 255 Ga. App. 104, 106, 564 S.E.2d 509, 511 (2002) (finding that plaintiff was not entitled to notice and a hearing prior to the non-renewal of his contract because he did not achieve tenure status); *see also* O.C.G.A. § 20-2-942(c)(1) (2009) ("A person who first becomes a school administrator on or after April 7, 1995, shall not acquire any rights . . . to continued employment with respect to any position of school administrator."); O.C.G.A. § 20-2-942(c)(2.1) (noting that "[a] local board of education may enter into an employment contract with a school administrator for a term not to

30

exceed three years" but that "the school administrator shall have no right to renewal of such contract"). Accordingly, Defendants are entitled to summary judgment as to Plaintiff's procedural due process claim brought under § 1983.

C.   Substantive Due Process

To the extent that Plaintiff has alleged a substantive due process claim regarding the non-renewal of her contract, it is clear that an allegation of an adverse employment action, even if for allegedly pretextual reasons, implicates only procedural due process concerns. *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc) ("[A]reas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution.") (internal quotation marks omitted). Therefore, Defendants are entitled to summary judgment as to Plaintiff's substantive due process claim.

IV.   **42 U.S.C. § 1981**

Section 1981 provides, in pertinent part, that

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]

The essential elements of a § 1981 employment discrimination claim are the same as a Title VII race discrimination claim. *See, e.g.,*

31

*Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000). Since the same analysis is used for both Title VII and § 1981, the Court's rationale for granting summary judgment on Plaintiff's Title VII claims applies to Plaintiff's § 1981 claim. As previously explained, no evidence exists in the record that Defendants engaged in purposeful discrimination because of Plaintiff's race. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's § 1981 claim.

**V.   State Law Claims**

Plaintiff alleges state law claims of intentional and negligent infliction of emotional distress. (Am. Compl. ¶¶ 44-48.) For the following reasons, all Defendants are entitled to summary judgment as to these state law claims.

**A.   Defendant BEBC**

BEBC contends that it is entitled to summary judgment because of sovereign immunity. The Court agrees. "[S]overeign immunity extends to the state and all of its departments and agencies." Ga. Const. art. I, § 2, ¶ IX (e). BEBC is a political subdivision of the state of Georgia and is therefore vested with sovereign immunity unless waived. *See Chisolm v. Tippens*, 289 Ga. App. 757, 759, 658 S.E.2d 147, 151 (2008). "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. art. I, §

2, ¶ IX (e). Because there has been no waiver of sovereign immunity in this case, BEBC is entitled to summary judgment as to Plaintiff's state law claims.

> **B.**  Defendants in Their Official Capacities

Plaintiff's official capacity claims against Patterson, Hayden, and Van Wyck are construed as claims against these Defendants' employer—BCSD. *Price v. Dep't of Transp. of Ga.*, 257 Ga. 535, 537, 361 S.E.2d 146, 148 (1987) (internal quotation marks omitted) ("[W]here an officer or agent of the state is sued in his official capacity . . . it is a suit against the state and sovereign immunity attaches."); *see also Gilbert v. Richardson*, 264 Ga. 744, 750, 452 S.E.2d 476, 481 (1994).  BCSD has sovereign immunity, *Chisolm*, 289 Ga. App. at 759, 658 S.E.2d at 151, so Patterson, Hayden, and Van Wyck are entitled to summary judgment as to Plaintiff's official capacity state law claims against them.

> **C.**  Defendants in Their Individual Capacities

Patterson, Hayden, and Van Wyck, in their individual capacities, contend that they are entitled to summary judgment as to Plaintiff's state law claims because they have official immunity.  The Court agrees.  "[S]chool employees are entitled to official immunity from their actions if those actions are within the scope of their employment, discretionary in nature, and without wilfulness, malice, or corruption." *Wright v. Ashe*, 220 Ga. App. 91, 92, 469 S.E.2d 268, 270 (1996).  Where a task is ministerial, official immunity does not

33

apply.   "Generally, a ministerial act is one that 'is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.'" *Meagher v. Quick*, 264 Ga. App. 639, 642, 594 S.E.2d 182, 185 (2003) (quoting *Stone v. Taylor*, 233 Ga. App. 886, 888, 506 S.E.2d 161, 163 (1998)).  On the other hand, a discretionary task is one which "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  *Stone*, 233 Ga. App. at 888, 506 S.E.2d at 163 (internal quotation marks omitted).

   The retention, discipline, and supervision of school employees by their supervisors are discretionary tasks.  *Cf. Ga. Dep't of Corr. v. Lamaine*, 233 Ga. App. 271, 273, 502 S.E.2d 766, 768 (1998) ("We have consistently held that one who supervises or monitors another exercises discretion in so doing."); *Wright,* 220 Ga. App. at 93-94, 469 S.E.2d at 271 (noting that the task imposed on teachers to monitor, supervise, and control students is a discretionary task); *McDay v. City of Atlanta*, 204 Ga. App. 621, 621, 420 S.E.2d 75, 76 (1992) (recognizing that the operation of a police department, including the degree of training and supervision to be provided to its officers, is a discretionary function); *Vertner v. Gerber*, 198 Ga. App. 645, 646, 402 S.E.2d 315, 316-17 (1991) (providing that the supervision of inmates is a discretionary task).

Because the supervision and discipline of school employees is a discretionary function and because Plaintiff has failed to point the Court to any evidence in the record that would lead a reasonable factfinder to conclude that Defendants acted with actual malice, Patterson, Hayden, and Van Wyck, in their individual capacities, are entitled to official immunity.  Accordingly, Patterson, Hayden, and Van Wyck are entitled to summary judgment as to Plaintiff's state law claims against them in their individual capacities.

CONCLUSION

As discussed above, Defendants' Motion for Summary Judgment (Doc. 22) is granted as to all claims.


IT IS SO ORDERED, this 29th day of June, 2009.


                                  S/Clay D. Land
                                     CLAY D. LAND
                               UNITED STATES DISTRICT JUDGE